```
          IN THE UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF MARYLAND
```

MOHAMMED AZIZ, et al.,              *

       Plaintiffs          *

         vs.                 *   CIVIL ACTION NO. MJG-09-869

REPUBLIC OF IRAQ, et al.            *

       Defendants          *

\*       \*       \*       \*       \*       \*       \*       \*       \*

## MEMORANDUM AND ORDER

The Court has before it Defendant Alcolac, Inc.'s ("Alcolac's") Motion to Dismiss [Document 35], Plaintiffs' Motion to File an Amended Class Action Complaint [Document 40], and the materials submitted relating thereto.  The Court has held a hearing and has had the benefit of the arguments of counsel for Plaintiffs and Alcolac.[1]

As discussed herein, the Court will allow Plaintiffs to file the proffered Amended Class Action Complaint [Document 40-2], will dismiss the Class Action Complaint as moot and will address herein Alcolac's contention that the Amended Class Action Complaint should be dismissed.

---

[1]   Defendant Republic of Iraq has not yet been served and did not participate in the proceedings.

I.   BACKGROUND

   A.   Factual[2] Allegations

During the 1980s, Saddam Hussein's regime was using mustard gas and other chemical weapons on a widespread basis against Iran in the Iran-Iraq war.  The same types of weapons were also being used by Saddam Hussein against the Kurdish people of northern Iraq.  The Iraqi government needed ingredients for its chemical weapons program and solicited chemical companies in several countries.  Many companies refused to sell chemical products that could be used by Iraq to manufacture chemical weapons.

Following a 1984 U.N. investigation which showed that mustard gas and other chemical weapons had been used in the Iran-Iraq war, a number of governments including Australia, France, Germany, Italy, Japan, Korea, the Netherlands, New Zealand, Norway, Romania, the United Kingdom, and Switzerland placed licensing restrictions on the export of chemicals used in the manufacture of chemical weapons.

During the time relevant to the instant case, Alcolac was a subsidiary of Rio Tinto Zinc, a British conglomerate, and was

---

[2]   The "facts" herein are as alleged by Plaintiffs, not necessarily agreed upon by Alcolac.

2

based in Baltimore, Maryland.[3]  Alcolac manufactured thiodiglycol ("TDG"), a solvent used for a variety of lawful commercial purposes that can also be used as an ingredient in mustard gas.

In late 1987 and 1988, Alcolac manufactured and sold more than one million pounds of TDG to NuKraft Mercantile Corporation ("NuKraft"), a company located in Brooklyn, New York.  NuKraft shipped the TDG to Europe for transshipment to Iraq.[4]

These shipments of TDG were used to manufacture mustard gas used in the 1988 chemical weapons attacks by Saddam Hussein's regime against Halabja, Ekmole, and other Kurdish cities and villages.  Many Kurdish civilians died or were injured as a result of the mustard gas attacks.  Victims reported symptoms including difficulty breathing, watery eyes, vomiting, fainting,

---

[3]   In late 1989, Rhoune-Poulenc S.A., a French chemical company acquired Alcolac from Rio Tinto Zinc.  Today, Alcolac Inc. is a Georgia (U.S.) corporation directly owned by Rhodia, Inc., a U.S. subsidiary of Rhodia S.A., a French chemical company.

[4]   In February 1989, Alcolac pled guilty in this Court to one count of violating the Export Administration Act, 50 U.S.C. App. § 2410(a), 15 C.F.R. § 387.4, in connection with a shipment of TDG to a company in Singapore that transshipped the chemicals to Karachi, Pakistan, and then on to Iran.  (Def.'s Mot. in Supp. of Mot. to Dismiss, Ex. 2 [Document 35].)  During the plea hearing, the U.S. government proffered facts relating to a sale of TDG to NuKraft Mercantile Corporation that the government believed made its way to Iraq.  This appears to be the sale to which Plaintiffs' refer in the complaint.  (See Am. Compl. ¶ 32.)  However, Alcolac was not charged with a sale of TDG that ended up in Iraq.  (See Am. Compl. ¶ 32.)

chemical burns, and blindness immediately after the attacks, as well as ongoing physical and psychological disabilities.

In the Amended Class Action Complaint, the proposed Plaintiff classes consist of individuals of Kurdish descent who are victims, or family members of decedent victims, of mustard gas attacks in which the Saddam Hussein regime in Iraq used TDG supplied by Alcolac.  Class A Plaintiffs (United States citizens and permanent residents) assert claims under the Torture Victim Protection Act of 1991 ("TVPA") § 2(a), Pub. L. No. 102-256, 106 Stat. 73 (enacted March 12, 1992) (codified at 28 U.S.C. § 1350 (Historical and Statutory Notes)). Class B Plaintiffs (foreign nationals) assert claims under the Alien Tort Statute ("ATS"), 28 U.S.C. § 1350.

II.  PROCEDURAL BACKGROUND

On April 7, 2009, Plaintiffs filed the original Class Action Complaint [Document 1] asserting claims against Alcolac and the Republic of Iraq ("Iraq").[5]  Iraq has not yet been served and did not participate in the proceedings pertaining to the instant motions.

On August 10, 2009, Alcolac filed the instant Motion to Dismiss addressing the Class Action Complaint.  On November 9,

---

[5] The Class Action Complaint also named other Defendants who were voluntarily dismissed by Plaintiffs and were not included in the Amended Class Action Complaint.

4

2009, Plaintiffs opposed the dismissal motion, filed the Motion to File an Amended Class Action Complaint [Document 40] and proffered the Amended Class Action Complaint [Document 40-2]. In its Reply in Support of Its Motion to Dismiss [Document 44], Alcolac addressed the Amended Class Action Complaint.  The parties have submitted supplemental letter briefs regarding the Amended Class Action Complaint.  (Pls.' Ltr. Br. Feb. 4, 2009 [Document 48]; Def.'s Ltr. Br. Feb. 18, 2009 [Document 49].)  At the hearing on the instant motions, Plaintiffs and Alcolac[6] addressed the Amended Class Action Complaint.

III.  DISMISSAL STANDARD

To avoid dismissal pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted, Plaintiffs' "[f]actual allegations [need only] be enough to raise a right to relief above the speculative level," thereby "nudg[ing] their claims across the line from conceivable to plausible." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007).  In reviewing a motion to dismiss, a court accepts the material facts alleged in the complaint as true. Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999).  However, statements of bare legal conclusions "are not entitled to the

---

[6]  Defendant Iraq did not participate.

5

assumption of truth" and are insufficient to state a claim. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009).

IV. DISCUSSION

    A.    Class A - Torture Victim Protection Act

The Torture Victim Protection Act provides:

> Liability.-- An individual who, under actual or apparent authority, or color of law, of any foreign nation –
>
> (1) subjects an individual to torture shall, in a civil action, be liable for damages to that individual; or
>
> (2) subjects an individual to extrajudicial killing shall, in a civil action, be liable for damages to the individual's legal representative, or to any person who may be a claimant in an action for wrongful death.

28 U.S.C. § 1350 note § 2(a).

Alcolac is a corporation, not a human being. Therefore, Alcolac argues, it cannot be held liable under the TVPA.

The United States Court of Appeals for the Fourth Circuit has not addressed the question of whether a corporation can be sued under the TVPA. It appears that the two circuits that have considered the issue have reached different decisions. Compare Khulumani v. Barclay Nat. Bank Ltd., 504 F.3d 254, (2d Cir. 2007) (dismissing TVPA claim against corporation "for the additional reason that only natural persons are subject to liability under it") (Korman, J., concurring in part and

dissenting in part) with Romero v. Drummond Co., 552 F.3d 1303, 1315 (11th Cir. 2008) (citing Aldana v. Del Monte Fresh Produce, N.A., 416 F.3d 1242 (11th Cir. 2005) (allowing TVPA claim to go forward against corporation).  The Supreme Court has not resolved the conflict.

The Court, in the absence of binding precedent, will follow what it finds to be the more persuasive view, that of Judge Korman[7] in the Second Circuit.[8]  As stated in Khulumani, "[u]nder

---

[7]   United States District Judge sitting by designation.

[8]   As have at least some other district courts. See, e.g., Bowoto v. Chevron Corp., No. C. 99-02506—SI, 2006 WL 2604591, at *1 (N.D. Cal. Aug. 22, 2006) (holding that the TVPA did not authorize plaintiffs' lawsuit against a corporate defendant because the word "individual" is a term of art that means "human being"); Corrie v. Caterpillar, Inc., 403 F. Supp. 2d 1019, 1026 (W.D. Wash. 2005) (concluding "that the statutory language of the TVPA precludes a corporation from being a victim or a perpetrator."); In re Agent Orange Prod. Liab. Litig., 373 F. Supp. 2d 7, 56 (E.D.N.Y. 2005) ("Because the TVPA uses the same term 'individual' to identify offenders, the definition of 'individual' within the statute appears to refer to a human being, suggesting that only natural persons can violate the Act"); In re Terrorist Attacks on Sept. 11, 2001, 349 F. Supp. 2d 765, 828 (S.D.N.Y. 2005) ("Only individuals may be sued under the TVPA."); Mujica v. Occidental Petroleum Corp., 381 F. Supp. 2d 1164, 1176 (C.D. Cal. 2005) ("The Court holds that corporations are not 'individuals' under the TVPA based on its reading of the plain language of the statute."); Arndt v. UBS AG, 342 F. Supp. 2d 132, 141 (E.D.N.Y. 2004) ("UBS AG is not an individual, but a corporation, and as such cannot be sued under the TVPA."); Beanal v. Freeport-McMoRan, Inc., 969 F. Supp. 362, 382 (E.D. La. 1997) ("The text of the TVPA does not define the term "individual. . . . [T]his court finds that the plain meaning of the term 'individual' does not ordinarily include a corporation.") (citing Jove Engineering, Inc. v. I.R.S., 92 F.3d 1359, 1550 (11th Cir. 1996)).

the TVPA, the term 'individual' describes both those who can violate its proscriptions against torture, as well as those who can be victims of torture." 504 F.3d at 323. Also, as noted by the Supreme Court, while the term "person" often has broader meaning under the law, and may include both human beings and corporations, the term "individual" in ordinary usage refers to a "human being." Clinton v. City of New York, 524 U.S. 417, 428 n.13, 118 S.Ct. 2091, 2098 (1998). The Court finds it most sensible to apply the same meaning to the term "individual" in the statute whether the term is used to identify the perpetrator or the victim of actionable torture. Cf. Desert Palace, Inc. v. Costa, 539 U.S. 90, 101, 123 S.Ct. 2148, 2155 (2003)(" Absent some congressional indication to the contrary, we decline to give the same term in the same Act a different meaning depending on whether the rights of the plaintiff or the defendant are at issue.")

Accordingly, the Court concludes that it must dismiss the TVPA claims presented by the Class A Plaintiffs.

B.   Class B - Alien Tort Statute

The Alien Tort Statute ("ATS"), passed as part of the Judiciary Act of 1789, provides:

> The district courts shall have original jurisdiction
> of any civil action by an alien for a tort only,

> committed in violation of the law of nations or a treaty of the United States.

28 U.S.C. § 1350.

The Supreme Court stated in Sosa v. Alvarez-Machain, 542 U.S. 692 (2004), that "although the ATS is a jurisdictional statute creating no new causes of action," it provides aliens with right of action for a limited number of violations of international norms "accepted by the civilized world and defined with a specificity comparable to the features of the 18th-century paradigms [violation of safe conducts, infringement of the rights of ambassadors, and piracy]" at the time the ATS was enacted.  542 U.S. at 724-25.

While holding that the "door" to claims for violations of international norms "is still ajar," the Supreme Court has emphasized that it is "subject to vigilant doorkeeping, and thus open to a narrow class of international norms today." Id. at 729.  The Fourth Circuit has not yet addressed the matter.

In the absence of Fourth Circuit precedent, the Court finds useful the Second Circuit's three-step test to determine whether a norm of international law is sufficiently well-defined to give rise to jurisdiction under the ATS for a violation.

As stated in Abdullahi v. Pfizer, Inc.:

> We determine whether the norm alleged (1) is a norm of international character that the States universally abide by, or accede to, out of a sense of legal obligation; (2) is defined with a specificity

9

comparable to the 18th-century paradigms discussed in Sosa; and (3) is of mutual concern to States.

562 F.3d 163, 174 (2d Cir. 2009).

In the proffered Amended Class Action Complaint, Plaintiffs broadly assert that their claims arise out of the Republic of Iraq's "unlawful use of chemical weapons against the Kurdish people" and its "commission of Genocide, Extra-Judicial killings and other violations of international law." (Am. Compl. ¶¶ 1, 8.) In the specific allegations pertaining to the ATS, Plaintiffs allege that there are international norms against the use, development, manufacture, and stockpiling of chemical weapons. (Am. Compl. ¶¶ 56-60).[9] At the hearing, counsel for Plaintiffs made it clear that the essence of their ATS claim is the contention that the Republic of Iraq violated an international norm prohibiting genocide using chemical weapons. (Hr'g Tr. 22:22-23:2, Feb. 25, 2010.)

---

[9] Plaintiffs rely on the Geneva Conventions of 1925 and various U.N. Security Council Resolutions as bases for these norms. Their reliance is misplaced. While the ATS does provide for jurisdiction over torts committed in violation of "a treaty of the United States," the Second Circuit has held that a treaty must create an enforceable right in order for a plaintiff to assert a cause of action for its alleged violation under the ATS. Mora v. New York, 524 F.3d 183, 193 (2d Cir. 2008). The Geneva Conventions and U.N. Security Council resolutions cited by Plaintiffs do not themselves create independent private rights of action. However, Plaintiffs suggest that they may be used by courts to help identify those universally accepted principles of customary international law that are actionable under the ATS.

The Court will assume in the present (Plaintiffs vis-à-vis Alcolac) context,[10] that there would be a viable ATS claims against Iraq for engaging in genocide.  See Kadic v. Karadzic, 70 F.3d 232, 242 (2d Cir. 1996).  However, Plaintiffs do not allege that Alcolac itself engaged in genocide but, rather, that the corporation aided and abetted Iraq in the nation's violation of an international norm.  Thus, it is necessary to determine whether Plaintiffs have made sufficient allegations to support an aiding and abetting claim against Alcolac under international - as distinct from United States – legal principles.

The Second Circuit stated in The Presbyterian Church of Sudan v. Talisman Energy, Inc., 582 F.3d 244 (2d Cir. 2009),

> that under the principles articulated by the United States Supreme Court in Sosa v. Alvarez-Machain, 542 U.S. 692, 124 S.Ct. 2739, 159 L.Ed.2d 718 (2004), the standard for imposing accessorial liability under the ATS must be drawn from international law; and that under international law, a claimant must show that the defendant provided substantial assistance with the purpose of facilitating the alleged offenses.

583 F.3d at 247.  Thus, to establish an aiding and abetting claim under the pertinent international standards, Plaintiffs "must show that the defendant provided substantial assistance with the purpose of facilitating the alleged offenses."  Id.

Plaintiff has not presented allegations sufficient to establish that Alcolac provided TDG to Iraq with the purpose of

---

[10]   Without prejudice to full consideration of any contentions that Defendant Iraq may make regarding the matter.

11

facilitating genocide against Kurdish people.  Thus, following Talisman, Plaintiffs have failed to state a claim against Alcolac for aiding and abetting Iraq under the ATS.  Cf. Talisman, 582 F.3d at 248-49 ("We affirm the district court's grant of summary judgment in favor of Talisman because plaintiffs presented no evidence that the company acted with the purpose of harming civilians living in the Southern Sudan.")

    C.    Equitable Tolling

Plaintiffs based their claims on allegedly actionable chemical attacks that occurred in or about 1988.  Alcolac argues that Plaintiffs' claims under the TVPA are barred by the statute's ten-year limitations period.  Defendants also seek to apply that limitations period to Plaintiffs' ATS claims.

In view of the Court's dismissal of Plaintiffs' claims on substantive grounds, it is not necessary to address Alcolac's limitations defenses.  However, the Court must note that if equitable tolling questions should be presented in regard to claims against Defendant Iraq,[11] it would be necessary to consider various class action procedural issues.[12]

---

[11]    Or vis-à-vis Defendant Alcolac in the event the dismissal of claims against Alcolac was reversed by an appellate court.

[12]    For example, those relating to the determination of which Plaintiffs would be entitled to equitable tolling.

D.  Procedural Posture

The Court has concluded that it must dismiss Plaintiffs' claims against Alcolac.  However, the Court fully recognizes that the instant case presents potentially significant questions of first impression in the United States Court of Appeals for the Fourth Circuit.  Accordingly, it might be appropriate to take procedural steps to facilitate an expeditious appeal of the dismissal.

The Court will consider a request, by Plaintiffs and/or Alcolac to take action that would serve to expedite appellate review of the instant decision.  One such action might be to enter judgment with regard to Plaintiffs' claims against Alcolac pursuant to Rule 54(b) of the Federal Rules of Civil Procedure.

V.  CONCLUSION

For the foregoing reasons:

1. Plaintiffs' Motion to File an Amended Class Action Complaint [Document 40] is GRANTED.

2. The Amended Class Action Complaint [Document 40-2] is accepted for filing.

3. Defendant Alcolac, Inc.'s ("Alcolac's") Motion to Dismiss [Document 35] is GRANTED.

    a. The Class Action Complaint [Document 1] is dismissed as moot.

    b. All claims against Defendant Alcolac in the Amended Class Action Complaint are dismissed with prejudice.

      c. Plaintiffs shall arrange a telephone conference to be held by June 30, 2010 to discuss how best to proceed in the instant case.

SO ORDERED on <u>Wednesday, June 09, 2010</u>.

<u>             /s/       </u>  
Marvin J. Garbis  
United States District Judge
